KEYSER, SURVIVOR OF CARLISLE & KEYSER, Respondent, v. RAWLINGS AND OTHERS, Appellants.

1. In an action of forcible entry and detainer, where the defence relied on is that the entry complained of was made after an abandonment of the premises by the plaintiffs ; *held*, that evidence offered by defendants to the effect that previous to the alleged abandonment and the forcible entry complained of, the plaintiffs, then being tenants of one W. C. (claiming under whom the defendants made their entry) fraudulently attorned to one J. M., is inadmissible.

2. Where, in an action of forcible entry and detainer, one of two co-plaintiffs, who had, previous to the entry complained of, been in joint possession of

Keyser v. Rawlings.

the premises entered upon, dies, the survivor may recover all the damages sustained by such forcible entry and detainer.

3. *Quere.* Whether the estate of the deceased co-plaintiff is not entitled, in such case, to one half the sum recovered.

*Appeal from St. Louis Court of Common Pleas.*

This case has heretofore been in this court. The case is reported 18 Mo. 166. This was an action of forcible entry and detainer, brought before a justice of the peace, and removed by *certiorari* to the Circuit Court, and afterwards by change of venue to the St. Louis Court of Common Pleas. The complaint was by Carlisle & Keyser, as plaintiffs, against D. A. Rawlings, Thomas Rawlings, Isaac H. Sturgeon and Rowland Chambers, and stated, that on the 30th August, 1849, plaintiffs were in the peaceable possession of block No. 288, of the city of St. Louis, and the same premises upon which the said Carlisle & Keyser had been carrying on a steam saw-mill, which had been burnt down a short time previous to the date aforesaid; that on said date, while the said Carlisle & Keyser were peaceably possessed of said block, the defendants, with force, entered upon and into said block and took forcible possession thereof, and ever since have and still do forcibly detain the same from said Carlisle & Keyser, and that by threats and terror they turned Carlisle & Keyser out, and forcibly detain the possession from them.

After the change of venue to the Common Pleas, the death of Carlisle was suggested, and the suit continued to be prosecuted in the name of Keyser alone.

On the trial, the plaintiff introduced evidence tending to prove that Carlisle & Keyser were partners in the brick-making and saw-milling business; that their saw-milling business was carried on by them on block No. 288, the premises in controversy; that they had been in possession of said premises for two or three years prior to the burning of the saw-mill on said block; that said mill was burned down in August, 1849; that after the fire, said Carlisle & Keyser were in possession of said block, collecting the materials and lumber not burned, and the

wreck of the mill, up to the evening before the alleged forcible entry, a short time after the fire ;ᵢ that on the morning succeeding said entry it was found that said block had been enclosed by a fence during the night time or very early in the morning ; that the fence was up the next morning after Carlisle & Keyser quit work the evening before, and that Keyser went up to the fence, shook it, and demanded possession ; that D. A. Rawlings, T. Rawlings and Rowland Chambers, defendants in this suit, were inside of the fence, together with other persons, with guns and pistols ; that the said defendants had employed the persons who built a shanty upon said premises, and put up a fence around the same, and refused ·to vacate the same when possession was demanded, as above stated by the plaintiff, Keyser ; that upon the said premises, when taken possession of, was the wreck of the mill and engines, which were afterwards hauled away.

Defendants, on cross-examination of one of the plaintiffs' witnesses, asked the following questions, to-wit : " Were Childs and Emerson assignees of the tenancy of Hull, Allen & Childs, and tenants of Wm. Chambers ? Did they all sell to Carlisle & Keyser their interest in the premises as tenants of William Chambers in 1847 ? Did Carlisle & Keyser fraudently attorn to John Maguire after becoming tenants of William Chambers in the premises in question ?" The plaintiffs objected to said questions, and the court refused to permit any of them to be put to the witness. Defendants duly excepted.

Defendants also introduced evidence tending to prove that the fence was put up on the 30th of August; that Carlisle & Keyser had abandoned the premises after the burning of the saw-mill and before the entry was made and the fence put up, and that at the time said fence was put up no one was in possession of the ground. Defendants also offered to prove, by reading the petition in a suit brought by John Maguire against Isaac H. Sturgeon, that said Maguire, in that suit, claimed to be the owner of·the wreck of the said saw-mill after it was burned down. The court excluded this evidence, and defendants duly

excepted. Defendants also offered to prove that the premises in question were, in 1826, and from that time until the first day of May, 1848, in the possession of William Chambers ; that in June, 1845, Hall and Allen and Childs went into the saw-mill in question and put engines into and occupied the premises as tenants of Wm. Chambers ; that they continued as tenants of the premises until the spring of 1846, when Joshua J. Childs and Primus Emerson succeeded Hall, Allen and Emerson, as tenants of said property, under Wm. Chambers, and are the owners of engines in the saw-mill ; that they fraudulently attempted to attorn to John Maguire, as their landlord, in the spring of 1847, about the 9th day of May ; that they continued to recognize Wm. Chambers as their landlord up to the time that Carlisle & Keyser went into possession under John Maguire ; that Carlisle & Keyser knew that Childs and Emerson were tenants of William Chambers, and that they had attempted to attorn to John Maguire ; that Childs and Emerson had made a private sale of the engines and fixtures of the saw-mill in question to John Maguire, and that John Maguire put Carlisle & Keyser into possession of the mill in the place of Childs and Emerson ; that Carlisle & Keyser were not owners of the engines and fixtures of the mill ; and that John Maguire was, at the time of the fire, the owner of the engines, boilers and fixtures in said mill. The court, on objection made by plaintiff, refused to permit such proof to be given ; and defendants duly excepted.

The court gave the following instructions, asked by plaintiffs : "1. If the jury believe from the evidence, that Carlisle & Keyser were in possession of the premises described in the complaint prior to and up to the time of the burning of the mill spoken of by the witnesses, and that Carlisle & Keyser continued in possession of said premises until the fence spoken of by the witnesses was put up ; and if the jury shall also believe from the evidence that the defendants, Daniel A. Rawlings, Thos. Rawlings and Rowland Chambers, or either of them, after the burning of said mill, took possession of said premises and

employed or took upon said premises a large number of men, with guns and other deadly weapons for the purpose of keeping possession of said premises, and that the men so taken on said premises, by threats or menaces of a violent character towards Keyser, or towards any of his agents and servants employed to labor on said premises, frightened said Carlisle & Keyser or their agents or servants out of possession, and detained and held the same; if these facts appear from the evidence to the satisfaction of the jury, they should find for the plaintiff, unless the defendants have shown in evidence to the satisfaction of the jury that Carlisle & Keyser had abandoned the possession of said premises before the defendants took possession of the same. 2. If, prior to the commencement of this suit, Carlisle & Keyser were in the peaceable possession of the premises in dispute, by having thereon their property and servants and employees, engaged in any business of said C. & K., up to the close of the day, and that said C. & K., their servants and employees, left the premises for the night, intending to return thereto in the morning to pursue such business of said C. & K. as they had at the said premises, but that in the meantime and before the return of C. & K., their agents and employees, the next morning, defendants, or either of them, with a large force of men, entered upon said premises and enclosed the same with a fence in the absence of said C. & K., their servants and employees, said defendants, intending by force and by the display of deadly weapons to take and hold possession of said premises and keep out the said C. & K., their servants and employees, from the possession thereof; that any one or more of said defendants who so entered upon and who kept and held the possession of said premises, and kept out said C. & K. by force and by the display of deadly weapons, is guilty of the forcible entry and detainer alleged. 3. In order to establish an abandonment of the premises in question by Carlisle & Keyser, it must appear from the evidence to the satisfaction of the jury, that Carlisle & Keyser actually left said premises with the design and intention not to further use, possess or occupy

said premises. The mere declaration on their part of an intention to abandon said premises is not taken alone proof of an abandonment, but the jury must be satisfied from the evidence that such expressed intention was actually carried into effect by said Carlisle & Keyser, and that they left said premises with the intention not to occupy the same again. Although the jury may believe from the evidence, that Carlisle & Keyser, or one of them, after the burning of the mill, declared their intention not to rebuild or carry on the milling business again, that declaration, unless accompanied or followed by actual abandonment, is not sufficient to show or establish an abandonment by Carlisle & Keyser of the premises in question. 4. Although it should appear in the case of any defendant that he was not actively engaged in making the forcible entry and detainer, as complained of, yet, if the jury are satisfied from the evidence that such forcible entry and detainer was made in manner and form as alleged, and that such defendant was at the time aiding and abetting, by his counsel and advice, those who did make said forcible entry and detainer, and that he did employ, hire and pay those who made the same, to make it, then such defendant is guilty as if he had actively participated in the making such forcible entry and detainer."

To the giving of these instructions defendants excepted. The court then, on its own motion, gave the following : " 6. If the jury believe from the evidence that any witness has knowingly testified falsely in regard to any material fact in this cause, then they are at liberty to disregard his testimony altogether. It is, however, the exclusive province of the jury to determine what weight should be given to the testimony of each witness, or to any part of his testimony. 7. If the jury find for the plaintiff, they can allow damages only for the premises in the possession of Carlisle & Keyser, and from which they were dispossessed by the defendants or either of them." To the giving of which, defendants also duly excepted.

The defendants then asked and the court gave the following : " 1. If the jury believe from the evidence, that Carlisle & Key-

ser, immediately or within a week after the fire, abandoned the premises in question and declared their intention of never returning to said place, and that defendants, or some of them, entered in after such abandonment, then the plaintiff can not recover in this action for forcible entry and detainer, and the jury should find the defendants not guilty. 2. The declarations of Rufus Keyser, the plaintiff, are competent evidence to show abandonment in this cause, so as to bar the action of Keyser for forcible entry and detainer; and if the jury believe from the evidence, that Carlisle & Keyser had ceased to occupy and did not intend to return to said premises, or to have any thing more to do with them before the fence was erected, then the plaintiff can not recover and the jury will find the defendants not guilty. 3. If the jury believe from the evidence, that Carlisle & Keyser had no other business and carried on no other business on said premises in question than that of running a saw-mill there; that at the time of the fencing done in this case, the premises in question were vacant and unoccupied by any one for or in the employment of Carlisle & Keyser, and that said mill had been previously burnt; that *Carlisle & Keyser*, after the fire, and before the fencing, sold off all their logs on said premises, and their houses and wagons and wheels, and removed their lumber, and ceased to use and occupy or work, in person or by their hands, upon the said premises, and after the fire and before the fencing they ceased to occupy the said premises in any manner, and declared that they did not intend to go back there or have any more to do with the premises, and that C. & K. did not afterwards have any thing to do with the saw-milling business there or elsewhere, but carried on other and different business from that date; these are circumstances from which the jury may find that C. & K. did abandon the said premises. 4. In order for the plaintiff *to* recover against the defendants, or either of them, it is necessary for the plaintiff to show by evidence, to the satisfaction of the jury, that the defendants, or either of them, were in some manner connected with the forcible entry or detainer; that the entry or detainer

were upon or against the actual possession of C. & K.; and if the plaintiff has failed to show these facts satisfactorily to the jury, then it is the duty of the jury to find the defendants not guilty. If Carlisle & Keyser were in possession of said premises the day previous to the fencing, and had left the same the night previous with the intention to return and occupy the same, then they were in actual possession within the meaning of this instruction. 5. The plaintiff is required in this action, in order to recover against all of the defendants, to show that the defendants charged were in some way connected or acting together in the matters charged, and an entry by the defendants at different times, without any connection or joint design with each other, will not authorize a joint recovery against them, and the burden of showing the connection or joint acts of the defendants in the premises is upon the plaintiff."

The court refused the following, asked by defendants : " 4. If the jury believe from the evidence that the witness, Matthews, has knowingly testified falsely that the fence was put up in the night, and also falsely in swearing that there was no fence on the premises when he left at night, and that there was a fence on the place on the next morning at day-light, or that the said witness has knowingly testified falsely in any other matter material in this cause, then the jury is required to disregard his testimony altogether ; for the rule of law is, that a witness proved to be false in one thing, is to be deemed false in all things. 5. If the jury believe from the evidence that the witness for the plaintiff, Matthews, has knowingly testified falsely in regard to any material fact in this cause, then the jury is instructed that they are to disregard his testimony altogether. 6. If the jury believe from the evidence that Carlisle & Keyser abandoned the said premises at any time, then the plaintiff, is only entitled to recover damages, if the jury find for the plaintiff, for the period of time between the fencing and the day of abandonment. 7. This plaintiff is only entitled to claim in this action one half of the damages that may be found by the jury, if the jury find for the plaintiff. 8. This

plaintiff can not recover in this action if the jury believe from the evidence that he abandoned the possession before the fence was erected; and if the said Keyser had really abandoned the premises before the fencing, he could not acquire any right to sue in this action by going to the fence and shaking it, or by demanding possession after the abandonment. 9. The plaintiff, if he recovers at all, can only recover damages for the premises C. & K. actually occupied, and plaintiff can not recover damages for the fencing of premises, or for including within the fence, that enclosed the mill, other premises on which the said Carlisle & Keyser had occasionally scattered logs for the purpose of a temporary easement until they could be sawed. The plaintiff is limited in his claim for damages to the premises actually occupied by C. & K., and fenced by defendants at the time of the fencing. 10. The action of forcible entry and detainer is a proceeding in the nature of a joint action, and the plaintiff can not recover against any one or more of the defendants unless he can recover against all of them, and the acquittal of one defendant is a bar to any further proceeding against the other defendants."

The jury found for the plaintiff, and the defendants bring the case here by appeal.

*B. A. Hill* and *Shepley*, for appellants. 1. The court below improperly rejected the testimony offered on the part of defendant of a fraudulent attornment on the part of Carlisle & Keyser to John Maguire, a stranger, when they entered into possession, by and under the tenants of Wm. Chambers. The main ground of defence was that, after the fire, Carlisle & Keyser abandoned the premises, and, in the strongest terms, expressed their intention of never returning there again. In order to show that this intention, thus strongly expressed, was a fixed purpose of abandoning all claim of possession, the defendants proposed to show that Carlisle & Keyser originally took possession of their property with a fraudulent intent of ousting the real owner and person in possession, and retaining possession for John Maguire. While the mill was in existence, as

they paid no rent to the real landlord, they might very well find it to their interest to do this ; but when the mill burned down, and they had not only no idea of rebuilding the mill, but no idea of continuing in the saw-milling business, then they had no motive any longer to retain this land thus fraudulently for John Maguire. It was then a bare possession, without chance of profit, or motive for continuance. If, then, we had been permitted to show that Carlisle & Keyser were mere tenants at sufferance, liable to be dispossessed at once ; that all their hopes of gain were at an end ; it would have increased the probability of an abandonment of the premises by Carlisle & Keyser. 2. The court improperly rejected the evidence offered on the part of defendants, tending to prove that the engines, &c., the wreck of the mill, belonged to John Maguire and not to Carlisle & Keyser. This would have shown that, after the fire, there was nothing on the lot belonging to Carlisle & Keyser, and thus, with the other facts, have rendered the alleged abandonment more probable, and thus have conduced to prove the same. 3. The verdict and judgment were in favor of Keyser, who survived, for the whole amount of the damages, which the jury found had been sustained, when, in fact, Keyser could only recover one half thereof. The instruction asked by defendants was therefore improperly refused. The complaint was in the names of Carlisle & Keyser for an injury to their joint possession as tenants in common. No intimation is given in the original complaint that Carlisle & Keyser were partners, or sued as such. No amendment has been, or can be made, and they stood precisely in the situation of any other tenants in common, bringing a suit jointly for an injury to their joint possession. (See Carlisle & Keyser v. Rawlings, 18 Mo. 166.) The fourth section of fifth article of act concerning " Justices' Courts," (R. C. 1845, p. 650,) does not apply to proceedings under the act of " Forcible Entry and Detainer." This is a proceeding *sui generis*. The section above referred to was intended to apply only to the ordinary jurisdiction of justices' courts, and has no application to the special jurisdiction conferred upon

justices of the peace by the act " Concerning Forcible Entry and Detainer."

*Krum & Harding* and *Glover & Richardson*, for respondent.

LEONARD, Judge, delivered the opinion of the court.

The only questions relied upon in argument, in this case, relate to the exclusion of the evidence offered by the defendants below in relation to the circumstances under which the plaintiff took possession of the lot in controversy, and to the right of a surviving plaintiff in this proceeding to recover all the damages sustained, and we think there is nothing in either objection that requires us to reverse the judgment.

It is contrary to the fundamental principles of every system of civil law, to allow persons to enforce their own rights by *strong hand.* The law protects the possession of every one, no matter how acquired, from actual violence, and therefore even the true owner of land can not expel by force a wrongful possessor. The remedy provided by our law for such a wrong, is the summary proceeding by forcible entry and detainer, in which the relief afforded is a restitution of things to their former condition, by restoring the complaining party to the possession of which he has been deprived, and allowing him double compensation for the damages actually sustained. The principle upon which the remedy is given is stamped upon the face of the act in the emphatic declaration, that " the merits of the title shall in nowise be inquired into."

Here, it seems to have been admitted that the plaintiffs had been in possession, and the only question litigated at the trial was, whether the possession had been abandoned before the defendants entered. The rejected proof *showing* that it was originally taken by the plaintiffs against right and *so* held, was, it is insisted, proper evidence to aid the presumption afforded by the other proof in the cause, that the plaintiffs, when they left the lot at night, did so with the intention of not returning

again, because, in point of law and morals, they ought not to have returned, and had no inducement to do so.   To allow such proof however, we think, would be a palpable evasion of the law, and generally defeat its execution, and we are clearly of opinion that it was properly excluded.

In relation to the other point, it may be remarked that here there was a joint possession, and this possession, without any reference to the title of the party, is the thing protected.   The suit is for a wrong to this joint right, and the suit did not abate, as was decided when the case was here before ( 18 Mo. 166) by the death of one of the parties, but survived to the surviving plaintiff ; and we now think that, upon principle, the survivor must recover all the damages sustained.   The question, as to the right of the estate of the deceased co-plaintiff to one half, is a question between other parties.   It is enough for the defendants here that this judgment will protect them.   The judgment, with the concurrence of the other judges, is affirmed.